UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

SANTOS SANCHEZ,

        Plaintiff,

v.                                          Case No. 24-CV-0306

CITY OF MILWAUKEE, MOISES GOMEZ,
GEORGE IRIZARRY, STEVEN SPINGOLA,
KENNETH GRAMS, and JOHN VITRANO,

        Defendants.
_____

## AFFIDAVIT OF CAROL L. KRAFT
_____

I, CAROL KRAFT, being first duly sworn on oath, depose and state as follows:

1. I am an adult resident of the State of Wisconsin and I provide this Affidavit based on my personal information and belief.

2. I was employed as an Assistant District Attorney for the State of Wisconsin in 1996, and during the events at issue in this lawsuit.

3. I was the lead prosecutor in *State of Wisconsin v. Santos Sanchez*, Case No. F-962124. I have personal knowledge regarding, among other things, the documents and reports provided and/or available to me before/during that prosecution, the documents and reports included in the Milwaukee Police Department's (MPD) associated murder/investigation file (hereinafter, "M-file"), the police investigation conducted in that matter, and the prosecutorial decision made in that matter.

4. I was the lead prosecutor in the *Sanchez* murder trial, and I attended that trial which started on October 14, 1996 and ended on October 18, 1996.

5. On October 11, 1996, one week before trial started, I attended a hearing where I informed the Court of the following: "I reviewed this case. I am the district attorney that charged this case. I reviewed all the police reports that were generated in the investigation of this case, and I have interviewed Miss DePena personally during the course of that investigation, both prior to the time that the case was charged and after the case was charged…." Attached as **Exhibit 1** is a true and correct copy of the relevant pages of the transcript associated with this hearing.

6. My decision to bring criminal charges against Santos Sanchez, and to continue the prosecution against Mr. Sanchez, was based on the following information Christina DePena provided to me when I interviewed her: the shooting occurred in Ms. DePena's living room; Ms. DePena saw Mr. Sanchez arguing with Mr. Santiago in her living room a few minutes before the shooting; Ms. DePena saw Mr. Sanchez pull a firearm out of his jacket a few minutes before the shooting; Ms. DePena saw Mr. Sanchez holding the firearm a few minutes before the shooting; Ms. DePena saw Mr. Sanchez place or rub the firearm near Mr. Santiago's face and head a few minutes before the shooting; Ms. DePena was inside her apartment when the shooting occurred; Mr. Sanchez and Mr. Santiago were the only two people in her living room when the shooting occurred; Mr. Sanchez shot Mr. Santiago in the living room of her apartment on April 18, 1996.

7. Prior to the criminal trial, I received and reviewed a police report prepared by Detective Spingola, which was included in the M-file. (M3189, Sec. 4, p. 68-69.) Before trial, I was aware this police report indicates an anonymous person called the MPD and claimed that: someone named Pacha Candelario shot Mr. Santiago; someone named Paulina Candelario Decupy ordered the shooting; and Pacha could be located in the 1600 block of South 11th Street. Before trial, I was aware this police report indicates Detective Spingola ran several variations of those names through law enforcement databases and checked with the post office to determine if any

mailing addresses were associated with those names. Before trial, I was aware this police report indicates Detective Spingola did not locate any information associated with those names. Attached as **Exhibit 2** is a true and correct copy this police report, stamped M3189, Sec. 4, p. 68-69.

8. Prior to the criminal trial, I received and reviewed a police report prepared by Detective Hargrove, which was included in the M-file. (M3189, Sec. 4, p. 77-80.) Before trial, I was aware this police report indicates I asked Detective Hargrove to interview Roberto Morrobel, Mr. Sanchez's brother in-law, because I believed Mr. Morrobel may have information regarding the shooting. Before trial, I was aware this police report indicates that, during the interview, Mr. Morrobel stated that Mr. Sanchez told him Pacha and his associates were responsible for the shooting. (Id., p. 77.) Attached as **Exhibit 3** is a true and correct copy this police report, stamped M3189, Sec. 4, p. 77-80.

9. Prior to the criminal trial, I received and reviewed another police report prepared by Detective Hardgrove, which was included in the M-File. (M3189, Sec. 4, p. 70-73.) Before trial, I was aware this police report indicates that Detective Hardgrove spoke with Maria Torres during the investigation, that Ms. Torres indicated she met with Mr. Sanchez while he was in jail, and that Mr. Sanchez told Ms. Torres that Pacha was responsible for the shooting. Attached as **Exhibit 4** is a true and correct copy this police report, stamped M3189, Sec. 4, p. 70-73.

10. Prior to the criminal trial, I received and reviewed a written report prepared by ID Technician John Vitrano, which was included in the M-file. (M3189, Sec. 4, p. 57.) Before trial, I was aware this report indicates that a latent print was developed on the surface of the magazine associated with firearm used to shoot Mr. Santiago, and that ID Technician Vitrano assigned this latent print to latent case file # 96-01011-01. Attached as **Exhibit 5** is a true and correct copy this report, stamped M3189, Sec. 4, p. 57.

11. Prior to the criminal trial, I received and reviewed a police report prepared by Detective Grams, which was included in the M-file. (M3189, Sec. 4, p. 14-23.) Before trial, I was aware this police report indicates that ID Technician Vitrano checked the firearm used to shoot Mr. Santiago and the magazine associated with that firearm for any latent fingerprints, that one latent fingerprint was recovered from the magazine, that a fingerprint identification was pending, and that latent case file # 96-01011 was assigned to the same. (Id., p. 20.) Attached as **Exhibit 6** is a true and correct copy this police report, stamped M3189, Sec. 4, p. 14-23.

12. As an Assistant District Attorney, it was my common practice in/before 1996 to request and obtain the most updated copy of the associated M-file from the MPD (and other law enforcement agencies) a few days before the criminal trial was scheduled to begin. I did this to ensure I had all reports and documents included in the associated M-file before trial.

> PURSUANT TO 28 U.S.C. SEC. 1746 I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE. EXECUTED ON THIS 14TH DAY OF OCTOBER, 2025.
>
> /s/ Carol L. Kraft
> **CAROL L. KRAFT**