| PO-15B SUPPLEMENTARY REPORT<br>MILWAUKEE POLICE DEPARTMENT | Date of Report<br>4-19-96 | Incident/Accident #<br>96-109-3048/M-3189 |
|---|---|---|
| INCIDENT<br>HOMICIDE | Date of Incident/Accident<br>4-18-96 | Rep. Code # |
| VICTIM<br>SANTIAGO, Carlos Rivera | LOCATION OF INCIDENT<br>1831 W. Washington (upper) | DIST<br>6 |
| JUVENILE Last Name    First | Middle | Date of Birth |
| QUANT    TYPE OF PROPERTY | DESCRIPTION    SERIAL # | CODE #   VALUE |

On Thursday, 4-18-96, at 2:08 a.m., Squad 123 Late, **Detective Kenneth GRAMS**, was advised per ext. 7302, **Captain Monica RAY**, to respond to 1831 West Washington Street, in regards to a Homicide investigation. Squad 150, **Det. Lt. Michael YOUNG,** and Squad 125, **Det. Percy MOORE and Charles HARGROVE,** and Squad 115, **Det. Charlene FRITSCHE and James ORTIZ**, were also assigned to respond to this location.

Upon arrival at 2:20 a.m., I, Detective GRAMS, was advised by Squad 96, **P.O. Mark BUETOW**, that at 1:43 a.m. Squad 556, **P.O. John LUEBBE and P.O. Michael LOECHLER**, were dispatched to 1831 West Washington in regards to a shooting, possibly involving a robbery. Squad 96, P.O. BUETOW, indicated that he also responded at this time as a back-up squad, arriving at 1:44 a.m. P.O. BUETOW indicated that upon his arrival, he was the first squad on the scene and he observed that Engine 26 had arrived on the scene, however, no firefighters from Engine 26 had entered the dwelling. P.O. BUETOW further indicated that while responding to the scene, he was advised via dispatcher that the original call had been placed from a pay phone at 1035 South 16th Street, (672-9334). It should be noted that also responding to the scene was Squad 6, **Sgt. Luis GONZALEZ**, Squad 566, **P.O. John CORBETT and P.O. John BALCHUNAS,** Squad 60, **P.O. Gregory COLKER and P.O. Roberto COLON,** and Squad 62, **P.O. Scott RANDOW and P.O. Larry LEIBSLE**.

P.O. BUETOW indicated upon his arrival, he observed no disturbance outside of the dwelling at 1831 West Washington Street, at which time he responded toward the front exterior door of the residence, and observed the same to be standing ajar, approximately twelve inches. P.O. BUETOW entered the common hallway, proceeded up the flight of stairs toward the second floor landing, and

EXHIBIT 6

M3189/SEC 4/PAGE/4

Case 2:24-cv-00306-BHL    Filed 10/14/25    Page 1 of 10    Document 52-6

SUPPLEMENT REPORT
HOMICIDE, M-3189, #96-109-3048
PAGE 2

observed that the interior door leading to the living room from the common hallway was also ajar, less than one foot. P.O. BUETOW indicated that he was unable to detect any type of disturbance or movement from within the dwelling, at which time he opened the door and observed a male hispanic subject to be seated on a three seat sofa which was positioned adjacent the south living room wall. P.O. BUETOW indicated this male hispanic subject appeared to be motionless and he observed the subject's right forearm to be lying on the arm rest and the victim's head was leaning slightly forward and to the right. P.O. BUETOW further observed this victim to have an apparent gunshot wound to the left chin area and also observed a black steel, semi-automatic handgun to be lying on the living room floor. P.O. BUETOW indicated he also observed an open pack of Winston cigarettes to be situated on the sofa adjacent the victim's left leg. P.O. BUETOW indicated that the firefighters on Engine 26 responded into the upper dwelling at 1831 West Washington Street, and subsequently removed the victim from the sofa and placed the victim on the living room floor, at which time they performed medical treatment for the apparent gunshot wound. Engine 26 consisted of <u>Lt. David ROGOWSKI, Firefighter Edward KOZINSKI, Firefighter Monica BLAZEKOVIC, and Firefighter Steven ALONTE</u>. Engine 26 had initially been dispatched at 1:43 a.m. to 1831 West Washington Street in regards to a shooting or a stabbing.

 P.O. BUETOW further related that Med Unit #3 was dispatched to the scene at 1:50 a.m., arriving at 1:53 a.m., and this unit was manned by Paramedic officer <u>Nancy HUTCHINSON,</u> Paramedic <u>Karen KVIDERA,</u> and Paramedic <u>Bonnie LUND</u>. Paramedics attempted life support to the victim, however, this was ceased at 2:00 a.m., at which time the victim was deceased.

 P.O. BUETOW related that Firefighter Monica BLAZEKOVIC did check the victim's person for identification, however, no identification was found on the victim's person at this time. It

should be noted that the victim was subsequently identified as Carlos Rivera SANTIAGO, H/M, DOB: 2-10-65, MPD ID Division #276239.

Also, it should be noted that upon arrival of Squad 123, Detective GRAMS, Engine 26 and Med Unit #3 had already left the scene of this incident.

It should be noted that Squads 115 and 125 conducted interviews of witnesses at the scene, and will be filing supplementary reports along with Squad 96, P.O. Mark BUETOW.

I, Detective GRAMS, conducted an investigation of the crime scene. It should be noted this incident transpired in the upper portion of a duplex at 1831 West Washington Street. The lower dwelling duplex bears the address of 1829 West Washington Street, and this duplex is of white wood framed construction having green exterior trim with a gray wooden porch affixed to the front lower portion of the dwelling which faces Washington Street. There are five steps which leads from the city sidewalk area to the front porch. Adjacent the west side of this duplex is another duplex bearing the addresses of 1833/35 West Washington Street, and on the east side of 1829/31 West Washington Street is a playground-type lot. Inspection of the first floor exterior door which is a white steel framed door, it was revealed it had a functional door knob type lock and dead bolt type lock which were in the unlocked position. Proceeding into the common hallway which had sixteen red wooden steps leading from the first floor landing to the second floor landing. At the second floor landing was a brown wooden interior type door which had a functional door knob type lock which was in the unlocked position. Entry through this doorway led directly into the living room area of this residence which was located in the west center portion of this second floor. It should be noted the living room had white painted walls with gray trim around the windows and yellow curtains over the two windows which were on the west side of the living room. There was gray carpeting

SUPPLEMENT REPORT
HOMICIDE, M-3189, #96-109-3048
PAGE 4

in the living room and a functional overhead light which was on at the present time. Located in the northwest corner of this living room was a white and brown cloth, two seat sofa and located in the center portion adjacent the west wall was a brown wood grain television. Located adjacent the south living room wall was a three SOFA, white and brown cloth sofa. Positioned in the southeast corner of the living room adjacent the doorway leading to the kitchen area was a small, brown wood grain table and located directly in the southeast corner was a brown and white cloth chair.

The victim, Mr. SANTIAGO, was lying on his back with his head facing in a southeasterly direction and his feet facing in a northeasterly direction towards the west wall. The victim was lying adjacent the three seat sofa and the right leg of the victim was situated over his left leg. Both of the victim's arms were lying adjacent his sides, and it was revealed that the victim was wearing a waist length jacket which was open, and the sleeves were purple with the front portion of the jacket black in color. There were the letters "C.R." affixed to the left front portion of the jacket, and it was also observed that the left portion of the jacket had been cut from the waist area in a upward vertical fashion which was done by medical personnel. The victim was wearing light faded purple thigh length cloth shorts and the top button was open. The victim had white briefs on, and the victim was wearing black Nike Air Force tennis shoes, however, he did not have any socks on. The victim also had a hoop-type earring in his left ear. The victim had black hair and a beard and goatee-type mustache. The victim also had no shirt on at this time. It was observed that there appeared to be five to six inch vertical type scar on the left side of the victim's navel. Inspection of the victim's injury appeared that there was one single gunshot entrance wound to his left chin area, and there appeared to be a large amount of gun powder residue on the left portion of the victim's

SUPPLEMENT REPORT
HOMICIDE, M-3189, #96-109-3048
PAGE 5

cheek surrounding this entrance wound. At this time, there did not appear to be any type of exit wound. There also appeared to be blood on the victim's neck and chest area and also on his jacket and white briefs.

It should be noted that forensic Investigator Gene WILLIAMS responded to this scene at 3:00 a.m., and had initially been contacted at 2:03 a.m. from Milwaukee Fire Department personnel. Forensic Investigator WILLIAMS did pronounce the victim deceased at 3:00 a.m. Also responding to the scene was Assistant Medical Examiner Lynda BIEDRZYCKI.

It should be noted also that inspection of the victim revealed that there was a laceration over the victim's left eyebrow and also a small gouge type wound on the victim's left cheek area near his left eye.

At 3:50 a.m., Medical Examiner Lynda BIEDRZYCKI proceeded to bag the victim's hands.

At 4:00 a.m., Patton Transfer responded to the scene and the attendants, Douglas PATTON and Kenny PERRY, then proceeded to roll the victim over at the direction of Medical Examiner BIEDRZYCKI, at which time an examination of the victim's head revealed that there did not appear to be any exit wound from this projectile. The victim, Mr. SANTIAGO, was then secured in the conveyance vehicle at 4:07 a.m. by forensic Investigator WILLIAMS and Mr. SANTIAGO was conveyed by Douglas PATTON to the Medical Examiner's Office, at 933 West Highland Avenue.

It should be noted that upon initially observing the victim in the living room area, it was observed that there was a red in color matchbook which was lying on the victim's cloth shorts adjacent to his crotch area. This matchbook was subsequently retrieved as evidence and placed on MPD inventory #1578155, item #3. Also, inspection of the three seat sofa revealed that there was a large portion of fresh blood located on the seat and back cushion on the

far east portion of the sofa. There was a blood stain approximately 2' x 1 1/2' located on this particular seat cushion. Also, located on the seat cushion adjacent the blood stain was one open pack of Winston cigarettes which were retrieved as evidence, and placed on MPD inventory #1578155, item #4. Also located adjacent the east end of the three seat sofa was a blue and white ceramic type coffee mug which was empty, and this was also retrieved as evidence, and placed on MPD inventory #1578155, item #1. Located adjacent the north living room wall next to the entrance doorway was one clear drinking-type glass, and this also was retrieved as evidence and placed on MPD inventory #1578155, item #2. Located on the two seat sofa in the living room, in particular on the arm rest adjacent the west wall was a pack of Newport menthol king cigarettes, also retrieved as evidence and placed in MPD inventory #1578155, item #5. Located lying on the back support of this particular two seat sofa was a men's blue flannel-type shirt also retrieved as evidence, and placed on MPD inventory #1578148, item #1. Upon inspection of this shirt, I, Detective GRAMS, retrieved a white piece of paper from the left front shirt pocket of this shirt. This piece of paper depicted the numbers 2397187, and the name Cachorru. This piece of paper was placed on MPD inventory #1578155, item #1.

Also retrieved from the living room lying adjacent the two seat sofa on the floor was a black steel, semi-automatic handgun with brown wood grain type grips, Taurus brand, model PT-92, 9mm caliber, serial #B64819. I, Detective GRAMS, observed that this handgun was presently lying with the safety of the handgun facing in an upward direction and it was observed that the safety was in the "off" position. Also, the slide of the semi-automatic handgun was not in a locked back type position. Also, there did appear to be a magazine contained within the firearm. The front barrel of the handgun was facing in a southwesterly direction toward the west

wall. Also, there did not appear to be any type of blood evidence on this firearm. It should be noted at 5:45 a.m., I, Detective GRAMS, in the presence of P.O. Mark BUETOW, inspected this handgun and removed the magazine from the firearm and also checked the chamber of the firearm, at which time it was revealed that there was one spent brass cartridge casing which was located inside the chamber. This cartridge was a 9mm Win Luger. This handgun, spent casing, and magazine was subsequently conveyed by this detective to the ID Division at 8:30 a.m., at which time the magazine was emptied and it was observed that there were four unfired copper jacketed hollow point 9mm Win Luger rounds of ammunition removed from the magazine. It should be noted that these items, along with other items of evidence were conveyed to Squad 384 Days, **ID Technician John VITRANO**, who subsequently checked these items for any latent fingerprints, latent case #96-1011. It should be noted that one latent fingerprint was recovered from the magazine of this firearm with identification pending. ID Technician VITRANO will be filing a supplementary report pertaining to same. The firearm, magazine and cartridges were placed on MPD inventory #1578152, items #1 through #7. Also, Squad 384 Late, **ID Technician Diane HAFEMAN**, did respond to the crime scene and took forty-six photos at 5:00 a.m., and also collected one blood sample and control sample from the three seat living room sofa at 4:45 a.m. It should be noted also, retrieved as evidence from the dwelling were four residential type keys. One key was found on the top of the television in the living room and the other key was found underneath the blood stained sofa on the three seat living room couch. Two additional keys were found in the center bedroom adjacent the east wall. These items were placed on inventory #1578151, items #1 through #3. It was determined that these keys were used to secure the dead bolt and door knob type locks for the second floor front door and first floor exterior door leading to

SUPPLEMENT REPORT
HOMICIDE, M-3189, #96-109-3048
PAGE 8

the common hallway. It should also be noted that P.O. BUETOW related that upon his initial arrival the rear kitchen door leading to the back common stairway at this location was locked by means of a slide bolt type lock.

Inspection of the other rooms of this dwelling revealed that there was a bedroom in the northeast portion of this residence and adjacent this bedroom on the west wall was a small type closet area which had a door which led out to the front second floor porch of the dwelling which faced Washington Street. Located in the center east area of this residence was another bedroom and south of this bedroom, adjacent the east wall was a bathroom which consisted of one sink and a full bath. Proceeding south from the living room/bathroom area was a kitchen which contained a green table and four chairs in the northwest corner of the kitchen area. There was also a pantry adjacent the north kitchen wall. Located on the south kitchen wall was a stove, cabinet and refrigerator. Located in the southeast corner of the kitchen was the door leading to the rear common stairway. Located in the southeast portion of this dwelling was another bedroom. Also, located adjacent the east kitchen wall was a sink. It should be noted that located on the kitchen table was a white plastic bag which had white and blue lettering approximately 13 1/2" x 16", which contained various types of personal papers and pictures. These items, along with a black suede purse were retrieved as evidence and placed on MPD inventory #1578156, #1578154, #1578149, and #1578150. It should be noted that one of the items of paper, a birth certificate of Kenia SANCHEZ, depicted the child's father as a Santos SANCHEZ, unknown DOB. Also, it should be noted that I, Detective GRAMS, did observe that there was a phone located in the northeast bedroom of this dwelling, however, upon inspection it was not functional. Also, this crime scene will be depicted on a special diagram drawn by Detective GRAMS.

SUPPLEMENT REPORT
HOMICIDE, M-3189, #96-109-3048
PAGE 9

At 7:10 A.M., this residence was secured by Detective GRAMS.

At 7:12 A.M., I, Detective GRAMS, did respond to the pay phone at 1035 South 16th Street, and did determine that this phone was functional with the phone number (672-9334).

Follow-up investigation was conducted at the CIB, at which time I, Detective GRAMS, was advised that a possible suspect identity had been developed through the interviews of **Detectives Percy MOORE and Charles HARGROVE,** identifying the actor as a **Santos SANCHEZ**. Also, I was advised that this individual's vehicle, a 1986 Mercury, four door, bearing WI/PGK289, had been located on Washington Street, and subsequently towed to the PAB, as evidence tow.

While at the CIB, I, Detective GRAMS, was able to obtain, via DOT records, information regarding Santos SANCHEZ. Information identified the subject as Santos (nmn) SANCHEZ, H/M, DOB: 8-10-40. A wanted check revealed the subject was not wanted, not on probation or parole, however, he had an expired WI driver's license, with a last known address of 2010 South 16th Street. A III check revealed this subject had prior arrests, bearing FBI #871530E, and that he had been arrested in Chicago, and had used an alias of **Santos DELEADO**, DOB: 10-8-40. It should be noted that a check of MPD parking violations regarding Mr. SANCHEZ's vehicle revealed that he had parking violations in the 1300 block of South 24th, on 3-29-96, and also in the 1300 block of South 22nd Street. Also, a parking violation had transpired on 1-3-96, at 1833 West Washington Street.

At 11:16 A.M., I, Detective GRAMS, did enter a temporary felony warrant for the arrest of Santos (nmn) SANCHEZ, H/M, DOB: 8-10-40, for this Homicide offense, TTY #96-0546.

Investigation pending.

SUPPLEMENT REPORT
HOMICIDE, M-3189, #96-109-3048
PAGE 10

Report dictated by: Detective Kenneth R. GRAMS.

KRG/kt  4-19-96

| REPORTING OFFICER | PAYROLL # | LOC. CODE | SUPERVISOR SIGNATURE |
|---|---|---|---|
| Detective Kenneth GRAMS | 54867 | 93 | Lt Vitale |